IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OMAR FELIPE RAMIREZ, | } | |
| TDCJ-CID NO.1260533, | } | |
| Petitioner, | } | |
| v. | } | CIVIL ACTION H-07-1718 |
| NATHANIEL QUARTERMAN | } | |
| Respondent. | } | |

OPINION ON DISMISSAL

Petitioner Omar Felipe Ramirez, an inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ('TDCJ-CID'), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 and a memorandum, challenging his underlying conviction for capital murder. (Docket Entries No.1, No.2). Respondent has filed a motion for summary judgment, arguing that petitioner is not entitled to habeas corpus relief under § 2254. (Docket Entry No.11). Petitioner has filed a response to the motion. (Docket Entry No.12). After a careful review of the entire record and the applicable law, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

I. FACTUAL AND PROCEDURAL HISTORY

A Texas grand jury indicted petitioner in cause number 934225, alleging that he committed capital murder. *Ex parte Ramirez*, Application No.WR-66,989-01, page 36. Before petitioner's trial, petitioner's accomplice Roberto Fernandez was found guilty in a separate trial of the lesser-included offense of felony murder even though the evidence showed that he, and not petitioner, pistol-whipped and shot complainant. *Ramirez v. State*, No.14-04-00952-CR, 2005 WL 1690634 at *1 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (not designated for publication). In an oral pre-trial motion, petitioner asserted that double jeopardy and collateral

1

estoppel barred the State from re-litigating whether petitioner had the requisite intent to kill complainant as a party in light of Fernandez's conviction. *Id*. The state district court denied the motion. *Id*. Thereafter, a jury in the 185th Judicial District Court of Harris County, Texas heard evidence of the following, as summarized by the Fourteenth Court of Appeals for the State of Texas:

> This case involves the shooting death of Vien Ma, the complainant, during an aggravated robbery. On December 21, 2002, a Saturday morning, appellant and Roberto Fernandez entered the complainant's grocery store. Both men came prepared; Fernandez had a gun and appellant carried mace.[FN1] The complainant and his wife were both working that morning. Video surveillance footage captured the events that followed. After the men entered the complainant's store, appellant sprayed mace in the complainant's wife's face while Fernandez attacked the complainant. Fernandez repeatedly hit the complainant with his gun before shooting him once in the abdomen.[FN2] The complainant later died of this gunshot wound. After Fernandez shot the complainant, appellant jumped over the counter and went through the cash register area.[FN3] Appellant and Fernandez then fled from the store in a white van.
>
>> FN1. A witness at trial testified that the video showed appellant spraying something from what appeared to be an aerosol can at the complainant's wife's face. The complainant's son testified that his mother's eyes had a burned appearance. Appellant's attorney referred to the substance as mace spray during his closing argument. Although the record does not definitively identify the substance appellant used as mace, for simplicity, we refer to it as mace.
>>
>> FN2. Before firing the fatal shot, Fernandez beat the complainant so severely that he suffered twenty-five facial wounds, skull fractures, and brain swelling, in addition to many defensive wounds on his arms and body. During this time, appellant struggled with the complainant's wife, eventually spraying mace in her face.
>>
>> FN3. Appellant's fingerprints were later discovered on the counter.
>
> The complainant's wife ran out of the store, screaming for help. A woman who worked near the complainant's store saw appellant and Fernandez leave the store and then flee in the white van; the woman called the Houston police, who eventually captured appellant and Fernandez after they abandoned their van and

attempted to escape on foot. Fernandez was found with the complainant's blood on his clothing; however, police were unable to recover the gun or the mace the men used. Police officers also found several thousand dollars of cash in appellant's and Fernandez's possession, as well as in the van.[FN4]

> FN4. The majority of the money was found in the van and in Fernandez's possession; appellant had roughly $350.00 in cash when arrested. The complainant's son testified that the complainant typically kept large amounts of cash at his store on Fridays and Saturdays in order to cash his customers' paychecks.

Once arrested, appellant made numerous statements to the officers and later gave an audiotaped statement. In his initial statements to police, appellant incriminated himself in the robbery, but also expressed his anger with Fernandez.[FN5] Later, in his audiotaped statement, appellant claimed Fernandez had forced him to take part in the robbery.

> FN5. Appellant cursed the arresting officers before saying that he would rob them the next time. Appellant also asked the officers, "Did they find the gun? How would you feel if your partner did you like that? He should have stayed quiet."

*Id.* Thereafter, the jury found petitioner guilty as charged. *Id.*, Reporter's Record, Volume 6, page 149; Clerk's Record, page 117. The jury assessed punishment at confinement for life in TDCJ-CID. *Id.*, Clerk's Record, page 117.

In its Memorandum Opinion, the Fourteenth Court of Appeals also noted the following:

> During the trial, appellant sought to elicit testimony that, in the arresting officer's opinion, appellant was angry with Fernandez for shooting the complainant. Appellant argued that this lay opinion testimony would have shown that appellant did not intend for Fernandez to shoot and kill the complainant. The trial judge did not permit this line of questioning.
>
> The State never disputed that Fernandez, not appellant, shot the complainant. Consequently, the jury's charge authorized appellant's conviction either as a principal, a party, or a conspirator.

*Ramirez*, 2005 WL 1690634 at * 2.

On direct appeal, petitioner sought relief on grounds, "challenging the denial of his double jeopardy motion, the exclusion of the officer's testimony about his post-arrest statements, and the legal and factual sufficiency of the evidence to support his conviction." *Id.* The Fourteenth Court of Appeals addressed and overruled each ground and affirmed the state district court's judgment. *Id.* at *7. The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review ("PDR"). *Ramirez*, PD-1359-05.

Petitioner then filed a state habeas application, seeking relief on the double jeopardy ground raised on direct appeal and challenging the sufficiency of the evidence on the ground that the evidence was insufficient to show that he committed capital murder as a party or conspirator because his co-defendant, the principal actor, had been found to have unintentionally caused the complainant's death. *Ex parte Ramirez*, Application No.WR-66,989-01, page 7. In its Findings of Fact and Conclusions of Law, the state district court, sitting as a habeas court, found no controverted, previously unresolved facts material to petitioner's confinement that required an evidentiary hearing and recommended that relief be denied because petitioner's challenges had been raised on direct appeal. *Id.* at 26. The Texas Court of Criminal Appeals denied the application without written order on the trial court's findings without a hearing. *Id.* at inside cover.

In the pending petition, petitioner seeks federal habeas relief on grounds that the state courts' disposition of his double jeopardy and insufficiency claims are in direct conflict with Supreme Court holdings and the Sixth and Fourteenth Amendments to the Constitution. (Docket Entry No.2).

Respondent moves for summary judgment on grounds that petitioner he has failed to meet his burden of proof to show the state court's adjudication of his claims are unreasonable or that he is otherwise entitled to federal habeas corpus relief. (Docket Entry No.11).

## II. STANDARD OF REVIEW

### A. Summary Judgment

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified

5

a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a petition for discretionary review and in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner on a petition for discretionary review or in a state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of he prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas

7

rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III. ANALYSIS

#### A. Double Jeopardy

Petitioner contends that the prohibition against double jeopardy and the doctrine of collateral estoppel bar the State from litigating in his capital murder trial the element of specific intent to kill or to cause serious bodily injury because a jury, in a previous criminal trial, had found that Fernandez, the principal actor, did not have the specific intent to kill when they found him guilty of felony murder. (Docket Entry No.2). The Supreme Court has long held that "[n]othing in the Double Jeopardy Clause or the Due Process Clause forecloses putting petitioner

on trial as an aider and abettor simply because another jury has determined that his principal was not guilty of the offenses charged." *Standefer v. U. S.*, 447 U.S. 10, 22-25 & n.16 (1980). Moreover, because petitioner was not in jeopardy at Fernandez's trial, the results of that trial did not bind the State in its prosecution of petitioner.

Likewise, the doctrine of collateral estoppel, which is incorporated in the Double Jeopardy Clause, did not bar the State from re-litigating the intent element of capital murder at petitioner's trial because the issue was not originally litigated between the same parties. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (noting that collateral estoppel or issue preclusion "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit").

Similarly, petitioner cannot rely on the civil doctrine of non-mutual collateral estoppel. "Essentially, the principle of non-mutual collateral estoppel is that if a litigant has fully and fairly litigated an issue and lost, then third parties unrelated to the original action can bar the litigant from re-litigating that same issue in a subsequent suit." *United States v. Mollier*, 853 F.2d 1169, n.7 (5th Cir. 1988). Such doctrine, however, is inapplicable in criminal trials. *Id.* at 1175-77; *Nichols v. Scott*, 69 F.3d 1255, 1270-71 (5th Cir. 1995); *Ex parte Thompson*, 179 S.W.3d 549, 553-554 (Tex. Crim. App. 2005) (noting that "[i]t is well-established that one accomplice may be found guilty of a different, more serious offense than other accomplices"); *see also* TEX. PEN. CODE ANN. § 7.03(2) (Vernon 2003) (providing no defense that person for whose conduct the actor is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosecution").

9

In any case, the State was not barred under the Double Jeopardy Clause or any theory of collateral estoppel from litigating petitioner's guilt as a principal, party or conspirator to the offense of capital murder even though prior to petitioner's trial, the principal actor had been convicted of the lesser-included offense of felony murder. What is essential to petitioner's conviction of capital murder is evidence that supports a finding, beyond a reasonable doubt, that as a party, he assisted Fernandez in causing complainant's death, or alternatively, as a conspirator, he conspired with Fernandez to commit the robbery and complainant was murdered during the course of and in the furtherance of the robbery. As discussed below, there was ample evidence offered at petitioner's trial from which a jury could reasonably find that petitioner assisted or encouraged Roberto Fernandez in committing capital murder and that petitioner conspired with Fernandez to commit a robbery and complainant was murdered during the course of and in furtherance of the robbery.

### B. Sufficiency of Evidence to Support Conviction

Petitioner contends that the evidence is legally and factually insufficient to support his conviction for capital murder. Factual insufficiency of the evidence is not a cognizable habeas ground. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002). Moreover, to the extent that petitioner raises a factual innocence claim, petitioner has presented no evidence to support such claim and none of the facts underlying any of petitioner's claims would convince a reasonable jury that petitioner is actually and factually innocent of capital murder. Accordingly, the Court will only address petitioner's legal sufficiency challenge.

Petitioner contends the evidence is insufficient to support his conviction for capital murder as a principal because there is no evidence that he intended to kill or cause serious

bodily injury to complainant. (Docket Entry No.1). He also contends that the evidence is insufficient to show that he committed capital murder as a party or a conspirator because Fernandez, the principal actor who actually shot complainant, was found guilty in a separate trial of felony murder, which does not require a finding of intent to kill. (Docket Entries No.2, No.12). Petitioner maintains that "once the specific intent element was found lacking against the principal actor, a jury could not find that he, as a party or conspirator, had the specific intent to commit capital murder. (Docket Entry No.2). Therefore, he complains, his conviction was based on less than proof beyond a reasonable doubt of each element of capital murder in violation of clearly established federal law. (*Id.*).

A federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. *See* 28 U.S.C. § 2254(d)(1). Having already found that the State did not err in litigating the specific intent element of capital murder at petitioner's trial, the Court now reviews the state court's determination that the evidence was sufficient to support petitioner's conviction.

In its analysis of petitioner's insufficiency of evidence claims, the Fourteenth Court of Appeals, the last court to write a reasoned opinion on this issue, set forth the applicable Supreme Court law, along with corresponding state law, regarding challenges to the legal sufficiency of the evidence to support a conviction. *Ramirez*, 2005 WL 1690634 at *2. Citing section 19.03(a)(2) of the Texas Penal Code, the state appellate court noted that state law provides that the offense of capital murder is committed when a person intentionally or knowingly causes the death of an individual in the course of committing or attempting to commit a robbery. *Id.* at * 3. The state appellate court noted that the court's charge to the jury permitted

11

the jury to convict petitioner if it found he was guilty as a principal, as a party, or as a conspirator in accordance with section 7.02 of the Texas Penal Code. *Id.* at n.6. The state appellate court noted that under the law of parties, petitioner was "criminal responsible for Fernandez's conduct if [petitioner] solicited, encouraged, directed, aided, or attempted to aid Fernandez in committing the murder," as provided under state law. *Id.* The state appellate court further noted that petitioner could be found criminally responsible as a conspirator if complainant's "murder was committed in the attempt to carry out a conspiracy to commit the robbery . . . even if he did not intend to commit murder, as long as the murder was committed in furtherance of the robbery and should have been anticipated as a result of carrying out the conspiracy to commit the robbery." *Id.*

Petitioner, however, argued on direct appeal that the evidence was insufficient to convict him as a party because the evidence only showed that he was participating in the robbery by distracting the complainant's wife while Fernandez shot the complainant. *Id.* at *4. Petitioner contended that the record did not show any evidence that he desired to see the complainant killed. *Id.* Similarly, petitioner contended the record did not show that he aided, assisted, or encouraged Fernandez to shoot the complainant. *Id.* The state appellate court held that to find him guilty as a party, the evidence need only show that at the time of the offense, he and Fernandez were acting together, contributing some part towards the execution of a common purpose. *Id.* The state appellate court found the following evidence sufficient to support a finding that petitioner was guilty as a party to the offense:

> Appellant entered the complainant's store with Fernandez. When the men entered the complainant's store, Fernandez carried a gun and appellant had mace; both men arrived prepared to overcome resistance by force. Appellant sprayed what appeared to be mace in the complainant's wife's face while Fernandez severely beat, and eventually shot, the complainant with his gun. After Fernandez shot the

> complainant, appellant took money from the cash register area, and both men left the store together. When police tried to stop their vehicle, both men continued their flight on foot.

*Id.*

Petitioner also argued on direct appeal that the evidence was insufficient to convict him as a conspirator because there was no evidence that he should have anticipated that Fernandez would shoot and kill complainant. *Id.* at * 5. The state appellate court acknowledged petitioner's concession that the record suggested that petitioner, Fernandez and possibly others planned the robbery. *Id*. The state appellate court, however, found the record to show the risks and dangers that petitioner should have anticipated, as follows:

> Fernandez was armed with a loaded gun when appellant entered the store with him. The fact that the men entered the store armed with a gun supports the jury's finding that appellant should have anticipated the complainant's death. . . . The record also reflects that complainant's murder was in the furtherance of the robbery. The complainant and his wife struggled with Fernandez and the appellant when the two men began their attempt to rob the store. But it was not until *after* Fernandez shot the complainant that appellant took the money from the cash register.

*Id.* (citations omitted and emphasis in original). The state appellate court found the evidence legally sufficient to support his conviction for capital murder.

After a thorough review of the entire record, the Court concludes that a rational jury could have found beyond a reasonable doubt that petitioner was guilty of capital murder as a party or conspirator. Petitioner presents nothing to rebut the presumption that the state appellate court's opinion is incorrect. Respondent is entitled to summary judgment on this ground.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record, the Court ORDERS the following:

1. Respondent's Motion to Substitute Counsel for the Director (Docket Entry No.13) is GRANTED.

2. Respondent's motion for summary judgment (Docket Entry No.11) is GRANTED.

3. Petitioner's claims are DENIED, and the habeas action is DISMISSED with prejudice.

4.  All other pending motions, if any, are DENIED.

5.  A certificate of appealability is DENIED.

It is so ORDERED.

SIGNED at Houston, Texas, this 10th day of September, 2008.

                                              MELINDA HARMON
                                     UNITED STATES DISTRICT JUDGE

15